**IN THE UNITED DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**BRANDI MONTGOMERY,**
**for A.M Minor**                                               **PLAINTIFF**

    **VS.**                                        **CAUSE NO: 3:25-cv-306-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                  **DEFENDANT**

## <u>ORDER</u>

Plaintiff filed an application for disability benefits for her minor son, the claimant, on February 14, 2023. The application was denied at the initial and reconsideration levels, and Plaintiff filed a timely request for hearing. The Administrative Law Judge (hereinafter "ALJ") issued an Unfavorable Decision on October 9, 2024. The case was then appealed to the Appeals Council, and the Council issued a Notice finding no reason to alter the ALJ's decision on August 21, 2025, thereby making this case ripe for appeal here. For the reasons that follow, the undersigned finds that the ALJ's decision shall be AFFIRMED.

<u>The ALJ's Decision</u>

The Claimant was born in 2012 and was a school-aged child on the date the application was filed and the date of the ALJ's decision. Plaintiff asserted that Claimant was disabled due to his oppositional defiance disorder (ODD).

The ALJ evaluated Plaintiff's claims pursuant to the three-step sequential evaluation process applicable to childhood SSI claims, finding at step one, that the Claimant had not engaged in substantial gainful activity since the application date. At step two, the ALJ found that the Claimant had severe impairments of attention-deficit/hyperactivity disorder (ADHD), ODD, and generalized anxiety disorder (GAD). At step three, the ALJ concluded that the Claimant did not

have an impairment or combination of impairments that met or medically equaled a listed impairment[1] because he did not have "marked" limitations in two regulatorily-defined domains of functioning or an "extreme" limitation in one domain of functioning. Instead, the ALJ determined that the Claimant had a "marked" limitation in the domain of caring for himself, but he had "less than marked" limitations in four of the remaining five domains: acquiring and using information; attending and completing tasks; interacting and relating to others; and health and physical well-being. The ALJ found that the Claimant had no limitation in the domain of moving about and manipulating objects. Accordingly, the ALJ determined the Claimant was not disabled for purposes of the Act, and therefore was not entitled to receive SSI during the relevant period (Tr. 32).

Standard of Review

Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence "is more than a mere scintilla. It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). The Supreme Court has clarified that the threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id*. A finding of no substantial evidence is appropriate only where no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). In applying the substantial

---

[1] An impairment is functionally equal to a listed impairment when it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(b). The adjudicator must assess the functional limitations caused by the impairment, that is what the child cannot do, has difficulty, doing, needs help doing, or is restricted from doing because of the impairment. In making this assessment, the "interactive and cumulative effects of all of the impairments" for which there is evidence, including any impairments that are not "severe" are considered. 20 C.F.R. § 416.926a(a).

evidence standard, the Court must carefully examine the entire record but must refrain from reweighing the evidence or substituting its judgment for that of the Commissioner. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Issues

In this appeal, Plaintiff contends:

A) The ALJ erred in failing to find that the child was markedly limited in the domain of Interacting/Relating with Others; and

B) The ALJ erred in his analysis of the medical opinion of Dr. Tomsic, in this case.

Issue 1 — Did the ALJ err in finding child was not markedly limited in the domain of Interacting/Relating with Others?

With regard to the first issue, the ALJ found Plaintiff to have a marked limitation in the domain of Caring for Self. However, Plaintiff argues that the ALJ, who found in his analysis of the domain of Interacting/Relating with Others that the claimant has a less than marked limitation erred in doing so and, absent that error, the outcome of the decision would have been altered. .

Plaintiff argues that the "less than marked" assessment in the domain of Interacting/Relating with Others is not supported by substantial evidence. She writes that the following evidence clearly supports a marked limitation in that domain:

> School records revealed 13 disciplinary actions between September 7, 2023, and September 16, 2024, during the fifth and sixth grades (15E/11-17 and 9F/1). Specifically on September 7, 2023, he received discipline for exhibition of hostile actions of squirting with bottle and other bullying incidents. On September 8, 2024, he received corporal punishment upon his mother's request for cussing on bus. On September 14, 2023, he received three days of PASS time due to pushing and shoving another student in acknowledged horseplay. On September 20, 2023, he received 5 days of PASS time

after leaving classroom without permission, lying to teacher, and not staying seated. On October 2, 2023, he received corporal punishment secondary to making inappropriate gestures to girls in classroom. He was suspended from November 1, 2023, to November 3, 2023, secondary to dancing inappropriately in classroom and defiance as well as grabbing another student by the arm. On December 8, 2023, claimant airdropped a picture of a classmate to intentionally make fun and embarrass that student that resulted in five days of positive behavior support. On February 14, 2024, he was disrespectful to teacher and received a 2-day suspension. On March 18, 2024, claimant received two day suspension secondary to defiance as he continued to turn around laughing and causing disruption to class after being corrected to stay on focused assignment. On May 3, 2024 claimant disrupted class with inappropriate statement and he was offered NASTUC to finish out school year. On August 15, 2024, claimant was suspended from bus for two days due to moving from assigned seat several times and bullying and threatening to fight another student. On August 24, 2024, claimant lied to the substitute teacher. On September 16, 2024, claimant exhibited hostile behavior of jumping out of his seat and hitting another student as well as lied to the teacher (15E/11-17 and 9F/1). (TR 29).

Further, Plaintiff argues "… the ALJ did not adequately consider the evidence of record when he concluded, 'The teachers indicated claimant has some problems in this domain but nothing significant.'" (Tr. 23). She contends instead that the teacher questionnaires clearly show a serious problem with daily frequencies of expressing anger inappropriately; asking permission inappropriately; and disrespecting/obeying adults in authority.

Finally, on this issue, Plaintiff contends the ALJ erred again when he stated in his decision, "However, the observed behavior is during a period when claimant's medication was wearing off (after 3:00 pm) and it is not evidenced by primary care providers (1F, 2F, 4F, 6F, and 10F)." (Tr. 31). Plaintiff argues that his condition after his medications wear off is just as relevant and material as when Plaintiff is receiving the full benefit of the medication.

In response, the Commissioner, noting that Plaintiff only contests the ALJ's finding of less than marked regarding the domain of interacting and relating to others, points out that a limitation

is "marked" when it interferes seriously with your ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). In other words, a marked limitation is "more than moderate" but "less than extreme." *Id*. Most importantly, the Commissioner details the evidence in the record relied on by the ALJ in finding that the claimant had a less than marked limitation in the domain of interacting and relating to others. Among that evidence, the ALJ reviewed Claimant's teachers' questionnaires on this domain and while noting they varied in terms of observed severity of problems,[2] in general they noted, for the most part, relatively moderate problems in the domain of interacting and relating to others. In particular, the Commissioner gives these examples cited by the ALJ: On September 8, 2023, Claimant's English teacher's questionnaire indicated that out of 13 different criteria comprising this domain, Claimant had an "obvious" problem in 7/13 (in other words, in 1 of the 13 criteria); only "slight" problems in 2/13, 3/13, 4/13, 5/13, 6/13, 11/13 (that is, in 6 criteria); and "no problem" on 1/13, 8/13, 9/13, 10/13, 12/13, 13/13 (the 6 remaining criteria). (Tr. 28, 192). Claimant's science teacher stated that Claimant had serious problems in 3 of the13 criteria; obvious problems in 7 of the 13 criteria; and no problem in 3 of the 13 criteria, (Tr. 28, 198). Claimant's math teacher indicated that Claimant had obvious problems in 2 of the 13 criteria; slight problems in 2 of the 13 criteria; and no problem in 8 of the 13 criteria. (Tr. 28 citing Tr. 204). One year later, on April 15, 2024, Claimant's science teacher questionnaire indicated he had very serious problems in 3 of the 13 areas of criteria; serious problems in 5 of the 13; obvious problems in 1 of the 13 areas and; a slight problem in 1 of 13; and no problem 3 of the 13 areas. (Tr. 28-29, 245).

Thus, although one teacher questionnaire indicated that Claimant had serious or very serious problems, the remaining teachers indicated that Claimant generally had obvious, slight, or

---

[2] The criteria are measured on a scale of 1 to 5, ranging from measures "no problem," to "slight," to "obvious," to "serious" and then to "very serious".

no problems. Put another way, most of the teachers indicated that Claimant's problems in this domain were a three or less out of a five-point scale (Tr. 192, 198, 204).

The ALJ also cited primary care provider records in support of his finding, noting that mental status examinations did not show any observed abnormalities in the domain (Tr. 30, 330, 335, 340-41, 348, 352-53, 361, 374, 383, 424-45, 470-71, 482). Additionally, the ALJ noted that, while afterschool daycare workers, who are not medical providers, indicated some observed aggressive behavior, these observations occurred when Claimant's medication was wearing off (Tr. 30-31). The ALJ also noted that while Claimant had 13 disciplinary actions during the 5th and 6th grades, a review of the record shows that many of those incidents involved relatively minor infractions like cursing, horseplay, and defying teachers (Tr. 29-30, 310-316, 457). Significantly, the ALJ found the determination of the state agency medical consultants to be generally persuasive, including their finding that Claimant had a less-than-marked limitation in interacting and relating to others (Tr. 31, 55, 62). *See* 20 C.F.R. § 404.1513a(b)(1) ("State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.").

In sum, the Commissioner contends that although the record contains evidence that Claimant has some limitations in the domain of interacting and relating to others, substantial evidence indicates less than a marked limitation in this domain.

On review here, I find that the ALJ considered all the evidence and found among it, as discussed above, significant  evidence that supported a less than marked limitation in this domain. Plaintiff's argument, on the other hand, is in essence nothing more than a request that this court reweigh the evidence in Claimant's favor, something that the court may not do under the substantial evidence standard. *Brown*, 192 F.3d at 496. Because substantial evidence supports the ALJ's

finding that Claimant had a less-than-marked limitation in interacting and relating to others, the

ALJ's decision on this issue is affirmed.

<u>Issue 2 — Did the ALJ err in his analysis of the medical opinion of Dr. Tomsic?</u>

On this issue, the parties agree that the ALJ stated, in relevant part:

> The undersigned finds not persuasive [the]opinion dated September 24, 2024, by primary care provider, Martha Paige Tomsic, D.O., (Internal Medicine and Pediatric Clinic) that claimant has marked limitation in attending and completing tasks; extreme limitation in relating with others; extreme limitation in caring for yourself; and marked limitation in health and physical well-being, but no limitation in moving about and manipulating objects and less than marked limitation in acquiring and using information (11F), because Dr. Tomsic only checked boxes of form and provides no explanation for the imposed limitations. In addition, Dr. Tomsic's own treatment records show claimant is compliant with medication, which control ADHD with no observed mental abnormalities (1F, 2F, 6F, and 10F). Other medical records does not support this level of impairment as there is only initial evaluation in September 2023 and one follow-up in November 2023 at Sound Mind Psychiatry with impairments attention span and concentration, impaired judgment and insight; and anxious mood and affect, but normal thought content, intact associations, no abnormal or psychotic thoughts, intact memory, normal language, normal fund (TR 31) of knowledge, no suicidal or homicidal ideation, normal speech, and appropriate grooming and appearance (3F and 9F 3-4). (TR 32).

The parties also agree on the applicable legal standard to be applied to medical opinions. That is, under Agency regulations, agency adjudicators will not defer to any medical opinion in the record and instead must evaluate medical opinions for persuasiveness and articulate their consideration of the two most important factors: supportability and consistency. 20 C.F.R. § 416.920c(a), (b)(2). "Supportability" refers to the relevance of the objective medical evidence and supporting explanations offered by a medical source in support of his statement. *Id.* at § 416.920c(c)(1). "Consistency" refers to how consistent the statement is with the evidence as a whole. *Id.* at § 416.920c(c)(2). The Agency will explain its consideration of the supportability and

consistency factors and may, but is not required to, articulate its consideration of other factors affecting persuasiveness. *See id.* at § 416.920c(b)(2).

It is recognized that, "[w]hile the ALJ must explain how [they] considered the supportability and consistency factors for a medical source's medical opinions, there are no magic words or specific amount of explanation required." *Nancy S. v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6299864, at *5 (N.D. Tex. 2023) (quotation marks and citation omitted). The measuring stick for whether an ALJ's analysis constitutes an adequate discussion of supportability and consistency is "whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Luckett v. Kijakazi*, 2021 WL 5545233, at *3-4 (S.D. Tex. 2021) (citation omitted).

To essentially the same effect is *Clay v. Kijakazi*, No. 4:21CV149-SA-DAS, 2022 WL 13989015 (N.D. Miss. Oct. 21, 2022):

> While the new regulations simplify the explanation required, ALJs must still provide an adequate explanation of the "persuasiveness" for all expert opinions. The decisions must provide the appellate court with sufficient information to conduct a meaningful appellate review of the decision-making process. The courts must be able to read the decision and know what evidence the ALJ considered and understand why the ALJ reached a given result. Whenever the agency reaches a decision that is unfavorable to a claimant, in whole or in part, the decision must "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons." 42 U.S.C. § 405 (b)(1).
> ….
>
> The Fifth Circuit has stated, that an "ALJ does not need to comment on every piece of evidence, but only must build *an accurate and logical bridge between the evidence and the final determination. Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)(emphasis

added) (citing *Glomski v. Massanari*, 172 F.Supp.2d 1079, 1082, 77 Soc.Rep.Serv. 305 (E.D. Wis. 2001)).

In the instant case, the Plaintiff contends the ALJ improperly failed to consider, in accessing the persuasiveness of Dr Tomsic's opinion, the factors of consistency and supportability as required by the regulations and that failure to adequately caused great prejudice to Plaintiff as his analysis failed to create a discernable "logic bridge" between the evidence and the ALJ's persuasiveness finding." [Doc. 12] at 7-8.

On the other hand, the Commissioner argues that the ALJ addressed the supportability of Dr. Tomsic's opinion when he stated, as recited above, that Dr. Tomsic's opinion was not internally supported because Dr. Tomsic only checked boxes on a form and provided no explanation for the opined limitations (Tr. 31). Numerous district courts have found a check-box opinion to be unsupported when not accompanied by more fulsome explanation. *See Thomson v. O'Malley*, 2025 WL 1270303, at *5 (S.D. Tex. 2025) ("further bolstering the ALJ's conclusion as to supportability is the fact that Dr. Stein's circle the answer opinion at issue is unsupported by explanation or further rationale and the Fifth Circuit has determined that such brief and conclusory opinions which lack explanatory notes or supporting objective tests and examinations are not entitled to significant weight." (internal quotation marks and citation omitted)) (citing cases). The ALJ also addressed the supportability of Dr. Tomsic's opinion when he found that the opinion not supported by Dr. Tomsic's other treatment notes as those records "show claimant is compliant with medication, which control ADHD with no observed mental abnormalities" (Tr. 31). Further the ALJ pointed out that Claimant's status examinations were essentially normal, with Claimant observed to be in no acute distress, to be alert, and oriented to person, place, and time (Tr. 330, 335, 340-41, 348, 352-53, 361, 374, 383, 424-45, 470-71, 482). Finally, the Commissioner also points out that the ALJ addressed whether Dr. Tomsic's opinion was consistent with the other

medical evidence in the record, noting that the records showed normal thought content, intact associations, no abnormal or psychotic thoughts, intact memory, normal language, normal fund of knowledge, no suicidal or homicidal ideation, normal speech, and appropriate grooming and appearance (Tr. 31, 392-93, 459-60).

On review, I find that while Plaintiff argues that the ALJ's persuasive opinion concerning Dr. Tomsic's report is not consistent with or supported by the findings offered to explain it, that is an entirely conclusory argument not supported by record findings and is, in fact, demonstrably undermined by the ALJ's specific reference to findings in the record cited above which reasonably support the conclusion that Dr. Tomsic's report, inclusive (as it was) of extreme limitations in certain domains, was unpersuasive.

Accordingly, the ALJ's decision in all respects shall be and is hereby AFFIRMED.

**SO ORDERED**, this, the 24th day of July, 2026.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**